IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA M. ZIMMERLINK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-237 |
| | ) | |
| VINCENT ZAPOTSKY and VINCENT A. | ) | Judge David S. Cercone |
| VICITES, | ) | Magistrate Judge Cathy Bissoon |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Dismiss and/or For More Definite Statement (Doc. 3) be denied in part and granted in part, as discussed below.

### II. REPORT

**BACKGROUND**

In her single count Complaint, Plaintiff Angela M. Zimmerlink alleges that Defendants Vincent Zapotsky and Vincent Vicites retaliated against her for exercising her First Amendment rights to "free speech, political activity and political dissent" in violation of 42 U.S.C. § 1983.[1]

Plaintiff is one of the three elected Commissioners of Fayette County, Pennsylvania. (Compl. (Doc. 1) at ¶ 1.) Defendants Zapotsky and Vicites are the other two Commissioners. Id. at ¶ 2. Defendants are both Democrats, leaving Plaintiff as the sole Republican on the Board of

---

[1] In their Motion to Dismiss and/or For More Definite Statement ("Def's Mot.") (Doc. 3), Defendants sought to dismiss Plaintiff's defamation claim, to the extent Plaintiff was alleging such a claim. Id.; see also Def's Brief in Support of Motion to Dismiss and/or For More Definite Statement ("Def's Br.") (Doc. 4) at 11-12. They also sought to dismiss any claim based on the purported "forced representation of the County and Zimmerlink" in a prior lawsuit. Id. at 13. In her Opposition, Plaintiff clarified that she "seeks redress for one thing only: First Amendment retaliation." (Pl's Br. in Opp. to Defs' Mot. (Doc. 10) at 13.) She also clarified that she "has not pleaded a distinct cause of action based upon [the prior lawsuit]." Id. at 13-14.

Commissioners for Fayette County ("Board"). Id. at ¶¶ 2-4. As the minority member of the Board, Plaintiff "has been a persistent and outspoken critic" of the Board's policies and "has vigorously and/or publicly opposed [Defendants'] positions" on myriad matters. Id. at ¶ 12.

Plaintiff alleges that, in retaliation for "exercising her rights of free speech, political activity and political dissent," Defendants "have acted unlawfully and intentionally in conspiracy with one another to interfere with [her] ability to perform her duties as a Commissioner, including her ability to speak out effectively on issues of public concern." Id. at ¶¶ 13-15. She avers that Defendants have engaged in the following retaliatory actions: (1) "taking official action in private; holding executive sessions to deliberate matters that are not properly the subject of executive sessions; excluding [Plaintiff] from executive sessions involving matters that were voted on at later public meetings; and failing to announce the specific reasons for executive sessions"; (2) "excluded [Plaintiff] from communications and withheld information pertaining to County business"; (3) "[t]aken official action without allowing Zimmerlink's participation"; (4) "manipulate[d] public Board meeting minutes"; (5) "forced separate representation for the County and [Plaintiff]" in a recent lawsuit against Plaintiff and the County; (6) "sacrifice[d] the interests of the County" in a recent lawsuit; and (7) "discredit[ed] and defame[d] [Plaintiff]" in connection with the settlement of a recent lawsuit. Id. at ¶ 14.

Defendants have moved to dismiss Plaintiff's Complaint on the grounds of absolute legislative immunity or qualified immunity. (Defs. Br. in Support of Mot. (Doc. 4) ("Defs' Br.") at 5-9.) Alternatively, Defendants argue that Plaintiff's Complaint is not sufficiently detailed for them or the Court to engage in a proper immunity analysis and accordingly, ask that Plaintiff be ordered to file a more definite statement. Id. at 9-10. The Court agrees with Defendants on the

latter argument, and concludes that Plaintiff's Complaint is insufficiently specific to reach the issue of whether Defendants are entitled to legislative or qualified immunity.

**ANALYSIS**

The United States Supreme Court has held that like state and regional legislators, "local legislators are likewise absolutely immune from suit under § 1983 for their legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). The immunity attaches "to all actions taken 'in the sphere of legitimate legislative activity.'" Id. (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). Legitimate legislative activities include those activities that are "'an integral part of the deliberative and communicative processes' . . . with respect to the consideration and passage or rejection of proposed legislation." Youngblood v. DeWeese, 352 F.3d 836, 839 (3d Cir. 2004) (quoting Gravel v. U.S., 408 U.S. 606 (1972)); see also Baraka v. McGreevey, 481 F.3d 187, 196-97 (3d Cir. 2007). Thus, actions may be legislative where those actions are "integral steps in the legislative process." Bogan, 523 U.S. at 55 (concluding that actions of voting or introducing a budget and signing a law into an ordinance all were legislative activities entitled to immunity). But, legislative immunity "does not extend to acts that are 'casually or incidentally related to legislative affairs but not a part of the legislative process itself.'" Id. (quoting U.S. v. Brewster, 408 U.S. 501, 528 (1972)). Most significantly, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54; see also Baraka, 481 F.3d at 200 (rejecting argument that motive of the actor should be considered and stating same).

Questions of immunity should be resolved "at the earliest possible stage in litigation." Thomas v. Independence Twshp., 463 F.3d 285, 299 (3d Cir. 2006). To this end, and "to protect the substance of the qualified immunity defense," the Court of Appeals for the Third Circuit has stated that where a complaint "does not lend itself to an early resolution of the qualified

immunity issue, a district court" may, among other things, "grant a defense motion for a more definite statement under Rule 12(e) with respect to the conduct of which the plaintiff complains." Id. at 301 (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).  The Thomas Court expressly opined that a Rule 12(e) motion is "particularly useful[]" in the context of an immunity defense.  Id.  Indeed, in Thomas, the Third Circuit remanded and instructed the district court to order plaintiffs to file a more definite statement "so that the [defendants] may reassert, and the District Court may reconsider, the qualified immunity issue in the light of the factual context of this case." Id. at 299.  In so concluding, the Third Circuit recognized that plaintiff's complaint "complie[d] with the simplified notice pleading standard of the Federal Rules, . . . ,[but] it clearly [did] not provide good fodder for the framing of a qualified immunity defense." Id.  Although Thomas arose in the context of qualified immunity, this Court is of the opinion that the same concerns articulated in Thomas exist in the context of legislative immunity and that the Rule 12(e) procedural vehicle is likewise "particularly useful[]" in this context.  Finally, the Third Circuit also has found it appropriate, as Defendants have done here, to combine a Rule 12(e) motion for more definite statement with a Rule 12(b)(6) motion to dismiss.  Id.

In the instant case, Plaintiff argues that a more definite statement is not warranted because she has supported her claim "with many concrete, factual examples which allege specific illegal behavior by Defendants."  (Pl's Opp. to Defs' Mot. (Doc. 10) ("Pl's Opp.") at 10, 13.)  A careful review of Plaintiff's Complaint, however, reveals that her examples are far from concrete and her allegations are not sufficiently specific to evaluate Defendants' legislative immunity defense.[2]  (Compl. at ¶ 14.)

---

[2]  The Court observes that Plaintiff relies, in part, on her allegations in paragraph 12 to oppose Defendants' Motion.  But, as the Court reads it, the allegations in paragraph 12 consist of the protected conduct in which Plaintiff engaged, while paragraph 14 sets forth the alleged retaliatory conduct.  Compare Compl. at ¶ 12 (alleging more than 20 issues or items that she has "vigorously and/or publicly opposed") with Compl. at

For example, Plaintiff alleges that Defendants retaliated against her by "taking official action in private; holding executive sessions to deliberate matters that are not properly the subject of executive sessions; excluding [Plaintiff] from executive sessions involving matters that were voted on at later public meetings; and failing to announce the specific reasons for executive sessions" Id. at ¶ 14. Plaintiff does not specify the nature of the "official action," or the nature of the "matters" deliberated in the executive sessions. Similarly, although Plaintiff alleges that Defendants improperly excluded her "from communications" and "withheld information" (id.), Plaintiff does not assert the nature of those communications or the nature of the information that Defendants purportedly withheld. Perhaps the starkest illustration of the lack of specificity is Plaintiff's allegation that Defendants retaliated against her by taking "official action" without allowing her to participate. Id. The Complaint is devoid of any factual allegations concerning the nature of this alleged "official action."

Contrary to Plaintiff's allegations, it is not the case that "the information is within the exclusive control" of Defendants such that Plaintiff cannot plead her allegations with more specificity. Plaintiff alleges a retaliation claim – or, in Plaintiff's words, a "retaliatory exclusion" claim (Pl's Opp. at 13) – against Defendants. To plead such a claim, Plaintiff necessarily has to be aware of Defendants conduct to know or believe that she was excluded and that this exclusion was in retaliation for her exercising her First Amendment rights. Thus, as Plaintiff purportedly knows that she was excluded from "official action," it follows that she should know, and therefore be able to specify, the nature or substance of that "official action."[3]

---

¶¶ 13-14 (alleging seven different ways in which Defendants have "interfere[d] with . . . her ability to speak out effectively on issues of public concern"). As they are the crux of a First Amendment retaliation claim, the Court focuses on the lack of specificity of the allegations in paragraph 14.

[3] To the extent Plaintiff bases her First Amendment retaliation claim on a hunch that she was excluded, without actually knowing that she was excluded or without actually knowing the activities from which she was excluded, such a claim may suffer from falling short of even the most basic notice pleading requirements. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009) (stating that a complaint must do

In sum, as presently pled, the alleged retaliatory conduct consisting of taking unspecified "official action;" holding "executive sessions" on unspecified "matters that were voted on at later public meetings;" excluding Plaintiff from unspecified "communications;" withholding unspecified "information;" holding executive sessions on unspecified "matters that are not properly the subject of executive sessions" all could be legislative such that immunity attaches. On the other hand, this same conduct could be administrative or executive. The lack of specificity of Plaintiff's allegations precludes the Court from engaging in a meaningful analysis of the crucial inquiry, namely the nature of Defendants' alleged retaliatory conduct and whether that conduct is legislative such that immunity attaches, or merely administrative or executive. Stated differently, Plaintiff's allegations do not provide the Court "good fodder" to assess or resolve Defendants' claims of immunity. As such, the Court concludes that Defendants' Motion for More Definite Statement should be granted. Accordingly, the Court further concludes that Defendants' Motion to Dismiss should be denied without prejudice to Defendants raising their claim of immunity at some later date.

**CONCLUSION**

For all of the reasons stated above, it is respectfully recommended that Defendants' Motion to Dismiss and/or for More Definite Statement (Doc. 3) be granted in part and denied in part. Specifically, Defendants' Motion to Dismiss should be denied without prejudice and Defendants' Motion For More Definite Statement should be granted.

---

more than allege a "mere possibility of misconduct"); see also Mann v. Brenner, No. 09-2461, 2010 WL 1220963, at *2 (3d Cir. Mar. 30, 2010) (affirming dismissal of plaintiff's First Amendment retaliation claim because his allegations fell "far short of what is required to put the defendants on notice of the claims and the bases for them" where plaintiff made "vague and conclusory allegations that he was assessed some unreasonable fine for some unspecified violation," in retaliation for being successful in defending himself against the code violations imposed by defendants) (citing Iqbal and Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). The sufficiency of Plaintiff's allegations for purposes of a Rule 12(b)(6) motion to dismiss, however, is not before the Court.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by September 14, 2010. Responses to objections are due by September 28, 2010.

s/ Cathy Bissoon<br>
Cathy Bissoon<br>
U.S. Magistrate Judge

August 31, 2010

cc (via email):

Jordan L. Strassburger, Esq.
Karin Romano Galbraith, Esq.
Thomas P. McGinnis, Esq.