# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA M. ZIMMERLINK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-237 |
| | ) | |
| VINCENT ZAPOTOSKY, *et al.*, | ) | Judge David S. Cercone |
| | ) | Magistrate Judge Cathy Bissoon |
| Defendants. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that Defendants Fayette County, Vincent A. Vicites, and

Vincent Zapotosky's Motion to Dismiss (Doc. 22) be denied, as discussed below.

### II.      REPORT

**BACKGROUND**

#### A.      Factual Background

Plaintiff Angela M. Zimmerlink brings this action under 42 U.S.C. § 1983 and the First

and Fourteenth Amendments to the United States Constitution, alleging that Defendants Vincent

Zapotosky, Vincent A. Vicites, and Fayette County violated Plaintiff's rights of free speech and

equal protection of the laws.

Plaintiff and Defendants Zapotosky and Vicites are the three elected members of the

Fayette County Board of Commissioners ("County Board"). Am. Compl. ¶¶ 1, 3, 4 (Doc. 20).

Plaintiff is a Republican, and Defendants Zapotosky and Vicites are Democrats. Id. Plaintiff

alleges that she has been an "outspoken critic" of various policies and practices of Defendants

Zapotosky and Vicites. Id. at ¶¶ 14-15. Defendants Zapotosky and Vicites allegedly retaliated

against Plaintiff for her criticism by hindering her ability to participate in official county business and vote at County Board meetings.  See id. at ¶¶ 17-24.  For example, Plaintiff alleges that Defendants Zapotosky and Vicites repeatedly met to deliberate or conduct County business without notifying Plaintiff.  Id.  Such conduct allegedly violated Pennsylvania state law and prevented Plaintiff from fulfilling her responsibilities as a commissioner.  Id. at ¶¶ 17-20. Further, Defendants Zapotosky and Vicites allegedly instructed a County employee to manipulate County Board meeting minutes to mischaracterize public comments and vilify Plaintiff, and allegedly forced Plaintiff to obtain independent legal representation in prior litigation against the County and Plaintiff.  Id. at ¶¶ 25-26.  According to Plaintiff, all of this conduct was "undertaken in retaliation against [Plaintiff] for exercising her rights of free speech, political activity and political dissent."  Id. at ¶ 27.  Further, Defendants Zapotosky and Vicites "treated [Plaintiff] differently based on her politics, thereby violating her equal protection right guaranteed by the Fourteenth Amendment."  Id. at ¶ 21.

### B.     Procedural Background

Plaintiff filed an Amended Complaint (Doc. 20) in response to an Order (Doc. 19) granting a Motion for More Definite Statement.  Defendants filed a motion to dismiss (Doc. 22) the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff has failed to state a claim upon which relief can be granted with respect to both the First Amendment free speech claim and the Fourteenth Amendment equal protection claim. Alternatively, Defendants Zapotosky and Vicites argue that the Amended Complaint should be dismissed against them on the basis of qualified immunity.

### ANALYSIS

In deciding a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all

inferences from the facts alleged in the light most favorable to the plaintiff.  Phillips v. Cnty. of

Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  To survive a motion to dismiss, the factual

allegations in a complaint must "'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  The plaintiff must plead "enough

facts to raise a reasonable expectation that discovery will reveal evidence of the necessary

element[s]" of the plaintiff's cause of action.  Great Western Mining & Mineral Co. v. Fox

Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips, 615 F.3d at 177) (internal

quotation marks omitted).

### A.      Plaintiff's First Amendment Claim

#### 1.      Plaintiff Has Alleged Violation of a Federal Right

Defendants argue that Plaintiff's Amended Complaint only asserts violations of

Pennsylvania state law, and therefore fails to state a claim pursuant to 42 U.S.C. § 1983.  But

Plaintiff alleges that Defendants' conduct, which violated state law, was undertaken in retaliation

for Plaintiff's "speech, political activity and political dissent" that are protected by the First

Amendment.  Am. Compl. ¶ 27 (Doc. 20).  Plaintiff has alleged a violation of federal rights.

#### 2.      Plaintiff's Speech is Protected by the First Amendment

Defendants argue that Plaintiff's speech is not protected by the First Amendment

pursuant to Garcetti v. Ceballos, 547 U.S. 410 (2006), a case addressing the First Amendment

rights of public employees.  The Court therefore must determine whether Garcetti applies to

elected representatives like Plaintiff here.

*a. Supreme Court Precedent on Elected Officials' Speech*

Long before <u>Garcetti</u>, the Supreme Court established that, at least with respect to political

speech, elected legislators have First Amendment rights commensurate in scope with the First

Amendment rights enjoyed by citizens in general.  In <u>Bond v. Floyd</u>, 385 U.S. 116 (1966), the

Court found that the Georgia House of Representatives violated the First Amendment when it

excluded an elected Representative from membership in the House because of his statements

criticizing federal policy regarding Vietnam and Selective Service laws.  The Court found that a

State has "no interest in limiting its legislators' capacity to discuss their views of local or

national policy."  <u>Id.</u> at 135.  The Court explained that:

> The manifest function of the First Amendment in a representative
> government requires that legislators be given the widest latitude to
> express their views on issues of policy.  The central commitment
> of the First Amendment . . . is that 'debate on public issues should
> be uninhibited, robust, and wide-open.'

<u>Id.</u> at 135-36 (quoting <u>New York Times v. Sullivan</u>, 376 U.S. 254, 270 (1964)).

The Court rejected a proposed distinction between "citizen-critics" and legislators:

> The interest of the public in hearing all sides of a public issue is
> hardly advanced by extending more protection to citizen-critics
> than to legislators.  Legislators have an obligation to take positions
> on controversial political questions so that their constituents can be
> fully informed by them, and be better able to assess their
> qualifications for office; also so they may be represented in
> governmental debates by the person they have elected to represent
> them.

<u>Id.</u> at 136-37.

Since <u>Bond</u>, the Court has reiterated the importance of elected officials' free speech

rights.  See <u>Wood v. Georgia</u>, 370 U.S. 375, 395 (1962) ("The role that elected officials play in

our society makes it all the more imperative that they be allowed freely to express themselves on

matters of current public importance."); Republican Party of Minnesota v. White, 536 U.S. 765, 781-82 (2002) (same).

### b. *Garcetti and Its Predecessors*

Garcetti did not address the free speech rights of elected officials. Instead, Garcetti addressed the First Amendment rights of public employees. Some government restrictions on public employee speech is permissible because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Garcetti, 547 U.S. at 418-19 (citing Connick v. Myers, 461 U.S. 138, 143 (1983)). Nonetheless, a public employee's interest in commenting on matters of public concern must be balanced against the government's interest as an employer. See id. at 418-20. Thus, public employees who experience retaliation for speech made "as a citizen on a matter of public concern" have a potential First Amendment claim and "must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 418-19; see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill., 391 U.S. 563, 568 (1968). In Garcetti, the Court held that speech made pursuant to a public employee's "official duties" is not protected by the First Amendment because such speech is not made "as a citizen."[1] Garcetti, 547 U.S. at 421.

---

[1]   Even if the Court agrees with Defendants that Garcetti applies, dismissal would be inappropriate at this time because the Amended Complaint should be read to allege that Plaintiff spoke as a "citizen" and not pursuant to her "official duties." See Hill v. Borough of Kutztown, 455 F.3d 225, 242 (3d Cir. 2006) (holding that in considering motion to dismiss First Amendment retaliation claim by public employee, complaint that does not indicate whether plaintiff spoke pursuant to "official duties" should be read to allege that plaintiff spoke as a "citizen").

*c. Analysis*

Defendants' only response to <u>Bond</u> is that it was decided prior to <u>Garcetti</u>. Defs.' Reply Br. at 2 (Doc. 26). But <u>Garcetti</u>, and the public employee speech cases that preceded it, did not affect <u>Bond</u>. While the government has interests as an employer justifying some regulation of employees' speech, the government has no interest justifying regulation of elected legislators' speech. <u>Compare Garcetti</u>, 547 U.S. at 417 (recognizing government's interest as employer "in promoting the efficiency of the public services it performs through its employees" (quoting <u>Pickering</u>, 391 U.S. at 568)), <u>and</u> <u>Pickering</u>, 391 U.S. at 568 ("[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."), <u>with</u> <u>Bond</u>, 385 U.S. at 135-36 (finding that oath of office required for legislators "gives [the State] no interest in limiting its legislators' capacity to discuss their views of local or national policy," and that "[t]he interest of the public in hearing all sides of a public issue is hardly advanced by extending more [First Amendment] protection to citizen-critics than to legislators").

Because "[t]he manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy," <u>Bond</u>, 385 U.S. at 135-36, the governmental interest in regulating speech of public employees to promote efficient operations does not apply to speech of an elected official. <u>See</u> <u>Waters v. Churchill</u>, 511 U.S. 661, 675 (1994) ("The government cannot restrict the speech of the public at large just in the name of efficiency. But where the government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate." (plurality opinion)); <u>accord</u> <u>San Filippo v. Bongiovanni</u>, 30 F.3d 424, 441 (3d Cir. 1994), <u>cert. denied</u>, 513 U.S. 1082 (1995).

Further, attempting to apply <u>Garcetti</u> to elected representatives demonstrates that <u>Garcetti</u> cannot apply to speech of elected officials.  Under <u>Garcetti</u>, speech pursuant to a public employee's "official duties" is afforded no protection under the First Amendment.  <u>Garcetti</u>, 547 U.S. at 421.  <u>Bond</u> recognized that elected legislators have an "obligation" to speak on political issues.  <u>Bond</u>, 385 U.S. at 136.  Thus, if <u>Garcetti</u> applied to elected officials, speaking on political issues would appear to be part of an elected official's "official duties."  <u>See</u> <u>Garcetti</u>, 547 U.S. at 424-25 (noting that determining "official duties" is a practical inquiry into whether a "task is within the scope of the employee's professional duties").  But protection of such speech is the "manifest function" of the First Amendment.  <u>Bond</u>, 385 U.S. at 135.  <u>Garcetti</u>, thus, cannot be applied to political speech of elected officials consistently with <u>Bond</u>.

Pursuant to <u>Bond</u>, the First Amendment protects Plaintiff's political speech regarding "budgetary and fiscal matters, human resource issues, zoning practices, and County contract awards," Am. Compl. ¶ 14 (Doc. 20), and "the practice of Defendant Commissioners systematically operating behind closed doors."  <u>Id.</u> at ¶ 15.

### 3. Plaintiff Has Sufficiently Alleged Facts Demonstrating Motivating Factor and Chilling Effect

Plaintiff has alleged sufficient facts to demonstrate that she engaged in speech protected by the First Amendment, but that does not end the inquiry into whether Defendants' alleged retaliation rises to the level of a constitutional violation.  Outside the public employee context, "[i]n order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 296 (3d Cir. 2006) (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003)).

Defendants assert that Plaintiff failed to allege sufficient facts to establish the second and third prongs of a First Amendment retaliation claim.

Defendants first argue that Plaintiff cannot plausibly satisfy the causal link prong of a First Amendment retaliation claim because Plaintiff failed to identify any specific instances in which she spoke out against acts or policies of the Defendants.  Plaintiff's only allegations of her protected speech that led to retaliation are in paragraphs 14 and 15 of the Amended Complaint. Plaintiff does not identify specific instances of speech, but identifies specific subject matter that she criticized:  "budgetary and fiscal matters, human resource issues, zoning practices, and County contract awards" and "the practice of Defendant Commissioners systematically operating behind closed doors."  Plaintiff alleges that her speech motivated Defendants' retaliatory conduct.  The undersigned has not located any case law (and Defendant does not cite any) indicating that a Plaintiff must plead specific instances of speech to state a retaliation claim. While a close call, Plaintiff's allegations are sufficient to make a plausible "causal link" between protected activity (i.e., speech on the identified topics), and the alleged retaliatory conduct.  The fact that Plaintiff spoke out on the identified issues, followed by the Defendants' alleged conduct, is sufficient to "raise a reasonable expectation that discovery will reveal evidence" that Defendants acted in retaliation against Plaintiff's speech.  Great Western Mining & Mineral, 615 F.3d at 177.  Further, the motivating factor in a retaliation case is a question of fact typically inappropriate for resolution on a motion to dismiss.  Muti v. Schmidt, 118 Fed. Appx. 646, 649 n.1 (3d Cir. Dec. 29, 2004).  Thus, Plaintiff has pled sufficient facts to survive a motion to dismiss on the causal link prong of her First Amendment retaliation claim.

Defendants next argue that Plaintiff's own allegations demonstrate that Defendants' alleged retaliation did not deter her from speaking.  But Plaintiff correctly notes that the proper

inquiry is whether a person of "ordinary firmness" would be deterred, not whether the plaintiff actually was deterred. Thomas, 463 F.3d at 296; see also O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006); Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). Further, the "deterrence threshold" for a First Amendment retaliation claim "is very low," and "a cause of action is supplied by all but truly de minimis violations." O'Connor, 440 F.3d at 128 (citing Suppan, 203 F.3d at 234-35).

Plaintiff alleges that Defendants effectively prevented Plaintiff from fulfilling her duties as a County Commissioner, manipulated public Board meeting minutes to vilify Plaintiff, and forced Plaintiff to secure independent legal representation in a lawsuit against the County and Plaintiff. Accepting all these factual allegations as true – as we must at this stage – Plaintiff has alleged sufficient facts for a plausible finding that Defendants' conduct would deter a person of ordinary firmness from speaking. Plaintiff, therefore, has pled sufficient facts to survive a motion to dismiss on the deterrence prong of her First Amendment retaliation claim.

For the foregoing reasons, Plaintiff has stated a First Amendment retaliation claim.

### B.      Qualified Immunity

Defendants Zapotosky and Vicites contend that even if Garcetti does not apply, they are entitled to qualified immunity on Plaintiff's First Amendment claim because it was not clearly established that Garcetti does not apply to elected officials. As discussed below, given that clearly established law was unaffected by Garcetti, dismissal on qualified immunity grounds is inappropriate.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, __, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Whether clearly established law shows that a defendant's conduct violated a constitutional right "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  Id. at __, 129 S.Ct. at 822 (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)).

To assess Defendants' claim of qualified immunity, the Court must determine whether Plaintiff's First Amendment rights were "clearly established" at the time of the alleged constitutional violation.  Bond clearly established that elected representatives have First Amendment rights no different than the First Amendment rights of "citizen critics."  Consistent with Bond, the Third Circuit prior to Garcetti held in Monteiro v. City of Elizabeth, 436 F.3d 397 (3d Cir. 2006), that "[i]t is clearly established that when a public official excludes a [sic] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment."  Id. at 404; see also id. at 407 ("So long as legislators comply with procedural rules and speak on topics within the scope of the meeting, they enjoy an absolute right to express their views without restraint and without fear of subsequent retaliation. A leader who prevents a member from speaking or punishes a member for prior speech based on his or her viewpoint has infringed on the member's First Amendment rights." (Fisher, J., dissenting)).  Further, this Court recognized a First Amendment retaliation claim by an elected township commissioner who alleged that her co-commissioners took action to restrict her ability to fulfill her duties as commissioner and improperly conducted township business secretly and to her exclusion.  Smith v. Twp. of Aleppo, No. 05-cv-71, 2005 WL 4984380 (W.D. Pa. July 13, 2005) (Schwab, J.).

Garcetti did not change any of this clearly established law.  Nothing in Garcetti suggests that its holding might apply to elected officials.  As explained above, the government interests

justifying restrictions on public employee speech do not exist in the context of political speech by elected officials, and Garcetti cannot be applied to such speech consistently with Bond.

Further, no binding precedent since Garcetti indicates that Monteiro is no longer controlling law. The Third Circuit has expressly declined to decide if Garcetti applies to elected officials. See Hogan v. Twp. of Haddon, 278 Fed. Appx. 98, 102 n.1 (3d Cir. Mar. 11, 2008). But the Third Circuit in Olasz v. Welsh, 301 Fed. Appx. 142 (3d Cir. Oct. 14, 2008), reaffirmed the proposition from Monteiro that "when a public official excludes a [sic] elected representative or citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment." Id. at 144 (3d Cir. Oct. 14, 2008) (quoting Monteiro, 436 F.3d at 404).

In support of Defendants' contention that the relevant law was not clearly established, Defendants cite several non-binding cases from courts considering whether Garcetti applies to elected officials. Three district courts appear to have applied Garcetti to elected representatives. Shields v. Charter Twp. of Comstock, 617 F. Supp. 2d 606, 615-16 (W.D. Mich. 2009); Hartman v. Register, No. 1:06-cv-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007); Hogan v. Twp. of Haddon, No. 04-cv-2036, 2006 WL 3490353, at *6 (D.N.J. Dec. 1, 2006), aff'd on other grounds, 278 Fed. Appx. 98, 102 n.1 (3d Cir. Mar. 11, 2008) (expressly declining to address whether Garcetti applies to elected officials).[2] But three district court opinions that applied

---

[2]    Various other courts have held or implied that Garcetti does not apply to elected officials. Rangra v. Brown, 566 F.3d 515 (5th Cir. 2009), dismissed as moot, 584 F.3d 206 (5th Cir. 2009) (en banc); Blair v. Bethel Sch. Dist., 608 F.3d 540, 545 n.4 (9th Cir. 2010) ("To be very clear, we do not suggest that the retaliatory acts of elected officials against their own can never violate the Constitution. Obviously, they can." (citing Bond, 385 U.S. 116)); Carson v. Vernon Twp., Civ. No. 09-6126, 2010 WL 2985849, at *14 (D.N.J. July 21, 2010) ("Political expression such as Plaintiff's positions and votes on Township matters is unquestionably protected under the First Amendment."); Pistoresi v. Madera Irrigation Dist., No. CV-F-08-843, 2009 WL 256755, at *8 n.1 (E.D. Cal. Feb. 3, 2009) (noting in dicta that Garcetti did not apply because plaintiff was elected official); Conservation Comm'n of the Town of Westport v. Beaulieu, No. 07-cv-11087, 2008 WL 4372761, at *4 (D. Mass. Sept.

<u>Garcetti</u> to elected officials do not alter controlling law that was clearly established by <u>Bond</u> and

<u>Monteiro</u>.  <u>See</u> <u>Safford Unified Sch. Dist. # 1 v. Redding</u>, 557 U.S. __, __, 129 S.Ct. 2633, 2644

(2009) ("We would not suggest that entitlement to qualified immunity is the guaranteed product

of disuniform views of the law in the other federal, or state, courts, and the fact that a single

judge, or even a group of judges, disagrees about the contours of a right does not automatically

render the law unclear if we have been clear.").

    Defendants' alternative argument on qualified immunity warrants limited attention.

Defendants argue that "it is not clearly established that First Amendment claims by elected

officials alleging retaliation for their speech or political affiliation are actionable at all."  Defs.'

Br. at 10 (Doc. 23).  As already explained, <u>Bond</u> and <u>Monteiro</u> clearly established that elected

members of a state legislature or municipal governing body violate the First Amendment when

they exclude an elected member based on the excluded member's political views. [3]  Based on the

---

    18, 2008) (holding that <u>Garcetti</u> does not apply to appointed public officials); <u>Carrigan v. Comm'n on Ethics</u>, 236 P.3d 616, 622 (Nev. 2010) (en banc) (distinguishing public employees from elected officials), <u>cert. granted</u>, 131 S.Ct. 857 (Jan. 7, 2011).

[3]    To the extent Defendants rely on <u>Camacho v. Brandon</u>, 317 F.3d 153 (2d Cir. 2003), the Second Circuit explained that <u>Camacho</u> precludes only First Amendment political association claims brought by a *staff member* fired for his boss's political affiliations and allegiances. <u>Velez v. Levy</u>, 401 F.3d 75, 97 (2d Cir. 2005).  Thus, an elected school board representative could state a First Amendment retaliation claim against a state official who removed the plaintiff from the school board due to her political views. <u>Id.</u> at 97-98.  Further, <u>Camacho</u> relied on Supreme Court precedent that held that the First Amendment does not protect "policymaking" government employees from dismissal due to political affiliation.  The Supreme Court explained that "the ultimate inquiry is not whether the label 'policymaker' . . . fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for effective performance of the public office involved." <u>Branti v. Finkel</u>, 445 U.S. 507, 518 (1980).  Because party affiliation cannot be a requirement for effective performance of an elected representative, cases precluding political affiliation retaliation claims by "policymaking" government employees do not apply to the present case.  Thus, <u>Camacho</u> is inapposite here.

facts as alleged in the Amended Complaint, Defendants are not entitled to qualified immunity on

Plaintiff's First Amendment claim.[4]

### C. Plaintiff's Equal Protection Claim

#### 1. Plaintiff Has Identified Similarly Situated Individuals and Occasions of Differential Treatment

Plaintiff asserts a "class of one" theory under the Equal Protection Clause, which is

cognizable "where the plaintiff alleges that she has been intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in treatment."

Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Defendants argue that Plaintiff

failed to allege facts supporting the essential elements of her equal protection claim.

Specifically, Defendants assert that Plaintiff has not identified any similarly situated individuals

and occasions of differential treatment.

Contrary to Defendants' assertions, Plaintiff has identified Defendants Zapotosky and

Vicites as similarly situated individuals who were treated differently. According to Plaintiff's

Amended Complaint, Defendant Zapotosky treated Plaintiff differently than Defendant Vicites

by, among other things, including Defendant Vicites in meetings to the exclusion of Plaintiff.

Similarly, Defendant Vicites treated Plaintiff differently than Defendant Zapotosky. While

Plaintiff's Equal Protection claim may raise various other legal issues, Defendants at this stage

only assert that Plaintiff failed to identify similarly situated individuals who were treated

differently.[5] Plaintiff has alleged sufficient facts to survive Defendants' motion to dismiss on

this basis.

---

[4] Additionally, qualified immunity does not apply to Plaintiff's request for injunctive relief. Hill v. Borough of Kutztown, 455 F.3d 225, 244 (3d Cir. 2006).

[5] For example, political views seem to be a "rational basis" for differential treatment in the context of how elected representatives treat each other. Elected representatives frequently treat political allies differently from political foes, and such conduct obviously does not

2.      <u>Plaintiff's Equal Protection Claim is Not Duplicative of the First Amendment Claim</u>

Defendants next assert that Plaintiff's equal protection claim should be dismissed as duplicative of Plaintiff's First Amendment claim. The elements of a First Amendment retaliation claim are different from the elements of an equal protection claim. For example, if Plaintiff's speech was not the motivating factor for the alleged retaliatory conduct, but Defendants nonetheless intentionally treated Plaintiff differently than others similarly situated with no rational basis, then Plaintiff's First Amendment claim would fail but the equal protection claim would survive. See <u>Olech</u>, 528 U.S. at 565 (holding that proof of subjective motivation is unnecessary for "class of one" equal protection claim). Thus, the claims are not duplicative.

---

automatically constitute a violation of the Equal Protection Clause of the Fourteenth Amendment. It is unclear if the conduct alleged by Plaintiff (e.g., excluding her from meetings to conduct County business in violation of state law) could give rise to an equal protection claim. Defendants, however, have not raised this issue. Additionally, Defendants Zapotosky and Vicites have not asserted qualified immunity with respect to Plaintiff's equal protection claim and thus have presented no arguments regarding whether any alleged equal protection rights were "clearly established" at the time of the alleged unconstitutional conduct.

**CONCLUSION**

For all of the reasons stated above, Defendants Fayette County, Vincent A. Vicites, and

Vincent Zapotosky's Motion to Dismiss (Doc. 22) should be denied.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C),

and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and

Recommendation must be filed by April 28, 2011.  Failure to file objections will waive the right

to appeal.  Brightwell v. Lehman, __ F.3d __, 2011 WL 635274, at *5 n.7 (3d Cir. Feb. 9, 2011).

Responses to objections are due by May 16, 2011.


s/Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

April 11, 2011

cc (via email):

All attorneys of record.