IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA M. ZIMMERLINK, | ) |
| | ) Civil Action No.: 10-237 |
| Plaintiff, | ) |
| | ) Magistrate Judge Cynthia Reed Eddy |
| v. | ) |
| | ) |
| | ) |
| FAYETTE COUNTY, VINCENT | ) |
| ZAPOTOSKY and VINCENT A. | ) |
| VICITES, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

Pending before this Court is Defendant's Motion for Summary Judgment [ECF No. 56] of Plaintiff's First Amendment retaliation and Fourteenth Amendment Equal Protection claims against Defendant Commissioners and against Fayette County under 42 U.S.C. § 1983. The Motion is fully briefed and is ripe for disposition. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

### II. BACKGROUND

*a. Statement of Relevant and Material Facts*

As an enumerated county under the Pennsylvania County Code, 16 Pa.C.S.A. § 101, *et seq.*, Fayette County's corporate power is vested in a three member Board of Commissioners. 16 Pa.C.S.A. § 201-203. The Board "may adopt resolutions and ordinances prescribing the manner in which the powers of the county shall be carried out and generally regulating the affairs of the county." 16 Pa.C.S.A. § 509(a).

1

Plaintiff, Angela Zimmerlink, is one of three elected County Commissioners of the Board of Commissioners ("Board") for Fayette County, Pennsylvania. Am. Compl. [ECF No. 20] ¶¶ 1, 3, 4. Plaintiff claims that she is the sole Republican and the minority voice of the Board. *Id*. at ¶¶ 1, 11. Defendants, Vincent Zapotosky and Vincent Vicites, at all relevant times to this case, are the other two Commissioners of the Board. *Id*. at ¶ 3-4. Plaintiff alleges that Defendants, both being Democrats, are the majority voice of the Board. *Id*. Plaintiff alleges that she "has been a persistent and outspoken critic of the Defendant Commissioners' policies" including "budgetary and fiscal matters, human resource issues, zoning practices, . . . County contract awards[,]" and "the practice of Defendant Commissioners systematically operating behind closed doors, in violation of both the County Code and the Pennsylvania Sunshine Act. . . ."[1] *Id*. at ¶ 14-15. Due to her outspoken dissent of Defendant Commissioners' practices, Plaintiff claims that her First and Fourteenth Amendment rights were violated because Defendant Commissioners excluded Plaintiff and kept her from fulfilling her duties as a County Commissioner.[2] *Id*. at ¶ 21.

---

[1] Although Plaintiff's Amended Complaint alleges Defendant Commissioners violated the County Code and the Sunshine Act, she is not seeking remedial measures for those alleged violations nor has she stated a violation of that Act as a count in her Amended Complaint. Plaintiff specifically stated "Defendant's attempt to characterize this as a Sunshine Act case misses the point. Violations of that statute, to be sure, is a recurring theme. But Zimmerlink alleges that critical information was withheld from her in retaliation for her viewpoint [in violation of her First Amendment rights.] . . ." Pl.'s Opp'n Br. [ECF No. 60] at 17. Although "an official action [by a local legislator] in some circumstances could violate both the First Amendment and the Sunshine Act[,]" *Galena v. Leone*, 638 F.3d 186, 202 n.14 (3d Cir. 2011), this Court rejects any attempt by Plaintiff to bootstrap a state law claim into a federal claim by "dressing it in the verbiage" of a First Amendment retaliation claim, **especially** because that claim is "not expressly stated as a count within [P]laintiff's complaint." *Mackey v. Twp. of Cass*, 2012 WL 5463670, *2 (M.D.Pa. Nov. 8, 2012).

[2] The case heavily relied upon by Plaintiff, *Montiero v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006), is not applicable to the First Amendment retaliation discussion. In *Montiero*, a council member brought a First Amendment retaliation claim against the council president for ejecting him from a public council meeting due to his speech and having him arrested on disorderly conduct charges. *Montiero*, 436 F.3d at 399. The issue was whether qualified immunity applied to the council president for his actions of ejecting the council member from the public meeting. *Id*. *See also Olasz v. Welsh*, 301 Fed.App'x. 142 (3d Cir. 2008) (same). The line of cases governing the applicability of qualified immunity to local legislators for quelling speech at public meetings is not appropriate here. Plaintiff does not allege that she was restricted from attending, speaking or voting at public Commissioners' meetings due to her minority viewpoint. Indeed, she "does not complain about legitimate political activity." Am. Compl. [ECF No. 20] at 1. Her argument is that Defendants retaliated against her behind closed doors based on her

The following are instances in which Plaintiff claims that Defendant Commissioners violated her constitutional rights.

### i. Delta Consulting Corporation Contract

Delta Consulting Corporation ("Delta") is a consulting firm that seeks funding for local municipalities from state and federal governments. Pl.'s Opp'n Br. [ECF No. 60] at 6. Fayette County passed a resolution contracting with Delta in exchange for its services. *Id*. Plaintiff alleges that she opposed the resolution. *Id*. In March, 2009, Plaintiff alleges that Defendant Commissioners entered into negotiations with Delta to amend its contract with the County and excluded Plaintiff from participating in these negotiations. *Id*. at 5. Specifically, Plaintiff points to emails exchanged between the Defendant Commissioners and Delta regarding a proposal for continuing services with Delta. *Id*. When she confronted Defendant Commissioners and inquired about whether they had entered into negotiations with Delta, Defendant Commissioners denied being involved in any negotiations with Delta. *Id*. She also claims that the Defendant Commissioners failed to initially send her the draft amendment, and when she asked about the existence and/or status of such an agreement, Defendant Commissioners did not disclose the extent to which they were involved in negotiations with Delta nor did they mention any proposed amendment. *Id*. After failing to include her in negotiations and not disclosing the existence of a draft contract with Delta, Defendant Commissioners continued to exchange emails between each other regarding the proposal while denying its existence to Plaintiff. *Id*. at 5-6. Subsequently, the Board passed a resolution regarding the Delta contract that Plaintiff alleges "mirrored the terms Defendants had negotiated with Delta." *Id*. at 6 (citing Ex. 2 Mins. of 10/22/2009 Board Meeting [ECF No. 60-2] at 67-68). Contrary to the emails produced in discovery, both

---

viewpoint. *Id*. at ¶ 21. Therefore, these cases do not control the Court's decision on this matter and will not be addressed.

Defendant Commissioners denied working together to reach a deal about the Delta contract at their depositions.[3] *Id*. at 8-9. Defendants contend that Plaintiff was subsequently provided a copy of the proposed contract on October 2, 2009, three weeks before the Board voted to approve the contract. Defs.' Resp. to Pl.'s Statement of Material Facts [ECF No. 67] at ¶ 342.

### ii. Felice Associates Contract Extension

At all relevant times, Felice Associates ("Felice") acted as a consultant and arbiter to Fayette County for human relations related services. Pl.'s Op. Br. at 9. Plaintiff alleges that she was not in favor of Felice's retention to provide such services. *Id*. In early 2009, the Felice contract expired, and Plaintiff wanted to interview new candidates to provide human relation services to the County instead of renewing the Felice contract and sent Defendant Commissioners a letter expressing the same. *Id*. (citing 3/5/2009 Letter of Zimmerlink [ECF No. 60-2] at 35). Plaintiff claims Defendant Commissioners negotiated with Felice to her exclusion regarding a contract extension. *Id*. During these negotiations, Felice emailed an extension agreement to Defendant Vicites' assistant. *Id*. (citing 3/6/2009 Letter of Felice [ECF No. 60-2] at 37). Plaintiff alleges that she did not receive a copy of the extension agreement from the Commissioners,[4] and when she inquired about the status of the contract, neither Commissioner responded to her. *Id*. at 9-10. Plaintiff alleges that after "totally exclud[ing]" Plaintiff "from

---

[3] Commissioner Zapotosky's testimony read in pertinent part:
"Q: You and [Delta] has discussions with respect to amending the consulting agreement, correct?
A: I had initiated some – I initiated the discussion just – I acted on my own accord as a county commissioner just to – to see what we can do to offset the cost at that time because of the state budget crunch. I was concerned about other programs and funding them, you know, within a reasonable amount.
Q: Did you ever talk to Mr. Vicites about your concerns?
A: No. No. No." Def.'s Statement of Material Facts [ECF No. 58] (quoting Ex. B Zapotosky Dep. [ECF No. 58-6] at 87-89).

Commissioner Vicites' testimony read in pertinent part:
"Q: Did you ever discuss with Mr. Zapotosky the contract that was being negotiated with Delta?
A: No. Never discussed it at any time." *Id*. at 9 (quoting Ex. C Vicites Dep. [ECF No. 58-10] at 56-57).

[4] It is unclear from the email of record whether any Commissioner other than Vicites received the proposal because the email was addressed only to Vicites' assistant. *See* 3/6/2009 Letter of Felice [ECF No. 60-2] at 37.

4

participating in negotiations[,]" Defendants extended the Felice contract and subsequently ratified the contract at the commissioner meeting. *Id*. Plaintiff voted against ratification. *Id*. at 10.

### iii. 2010 County Budget

In September 2009, the Board was seeking measures to remedy the County's fiscal plight to implement in the 2010 County budget. *Id*. Plaintiff alleges that in the event severe budget cuts were necessary, she supported a plan that "only those county offices [with] particular fiscal difficultly" would be affected by the cuts. *Id*. (quoting Ex. 1 Aff. of Pl. [ECF No. 60-1] at ¶ 15). In contrast, Plaintiff alleges that Defendant Commissioners advocated for a county-wide "reduction in hours versus layoffs" to relieve the budget crisis. *Id*. (citing Ex. 2 9/2/09 Letter to Fayette County Employees from Def. Commissioners [ECF No. 60-2] at 41). Because of the Board's polarized positions on the budget, Plaintiff alleges that Defendant Commissioners held budget meetings and discussed the 2010 budget to her exclusion. *Id*. at 11. Plaintiff specifically alleges that although dates and times were scheduled and advertised to conduct budget meetings, the Defendant Commissioners were not present on the dates or in the places scheduled to hold the meetings. *Id*. at 12 (citing Ex. 2 12/10/09 Email of Pl. [ECF No. 60-2] at 47). Plaintiff claims Defendant Commissioners still held the budget meetings and spoke with department heads and directors, but such meetings took place in different locations and to the exclusion of Plaintiff. *Id*. at 13.

### iv. 2009 Hiring of County Information Technology Director

Fayette County's IT Director resigned on March 6, 2009. *Id*. at 13 (citing Ex. 2 5/6/2009 Emails [ECF No. 60-2] at 51). Plaintiff alleges that all Commissioners agreed to post and advertise the open position for a replacement. *Id*. at 13 (citing Ex. 2 5/6/2009 Emails [ECF No.

5

60-2] at 51). However, on March 7, 2009, the IT Director contacted Defendant Zapotosky via email regarding an IT issue, and suggested the County seek outside help on the issue due to his resignation. *Id*. Defendant Zapotosky replied, agreeing that "calling out for support would appear to be the option." *Id*. at 14 (quoting Ex. 2 5/7/2009 Commissioner Zapotosky Email [ECF No. 60-2] at 52). Plaintiff alleges Defendant Zapotosky copied the email to Vicites and his administrative assistant, but did not copy Plaintiff on the email nor did they seek her input on the decision. *Id*. Plaintiff claims that shortly thereafter, Defendant Commissioners offered the open IT Director position to a candidate without discussing the hiring with Plaintiff and subsequently ratified the decision at the Commissioners' meeting. *Id*.

      v.   Cellurale Lawsuit

In January 2009, the Cellurale family filed a lawsuit against Fayette County and Plaintiff for allegedly selectively enforcing the County zoning code against the family's land.[5] *Id*. at 14. The case was ultimately settled on behalf of all parties. *Id*. at 17. Plaintiff alleges that she was forced to incur the costs of retaining independent legal counsel before the County retained legal counsel on her behalf, although the County's and Plaintiff's interests in the case were aligned. Am. Compl. [ECF No. 20] at ¶ 26; Pl.'s Opp'n Br. [ECF No. 60] at 14-16 (citing Aff. of Pl. at ¶ 14). Further, Plaintiff alleges that Defendant Commissioners "instructed a county employee to manipulate the minutes of the November 19, 2009 Board meetings [sic] to mischaracterize public comments" related to the Cellulare lawsuit to vilify Plaintiff. Am. Compl. [ECF No. 20] at ¶ 25; Aff. of Pl. [ECF No. 60-1] at ¶ 10. Additionally, Plaintiff alleges that Defendant Commissioners "publically disparaged" Plaintiff by making statements to the media against the County solicitor's advice, and "wrote scathing editorials" about Plaintiff regarding the lawsuit. Pl.'s Opp'n Br. [ECF No. 60] at 20. With regard to the editorials, Plaintiff points to an email

---

[5]   2:09-cv-00058-CB (W.D.Pa. 2009)

exchanged between Tanya Cellulare, a non-party family member, and Commissioner Zapotosky in which Ms. Cellulare reviewed a draft editorial about the lawsuit ultimately published by a local newspaper. *Id*. at 13 (citing Ex. 2 1/1/2009 Email [ECF No. 60-2] at 57). Plaintiff also alleges that Defendant Zapotosky encouraged the Cellulares to file suit against Plaintiff and characterized the suit as spurious because the case settled before any depositions were taken. *Id*. at 17.

   b. *Procedural Background*

Plaintiff filed an Amended Complaint [ECF No. 20] on December 20, 2010 against Defendant Commissioners in their individual and official capacities and against Fayette County. The Amended Complaint sets forth claims alleging violations of Plaintiff's First Amendment and Equal Protection rights under the Fourteenth Amendment. Plaintiff specifically alleges:

> Defendant Commissioners have restricted Zimmerlink's right to access information needed to perform her duties and have conducted a significant amount of County business secretly and to her exclusion, have retaliated against her in violation of her First Amendment Rights and treated her differently based on her politics, thereby violating her equal protection right guaranteed by the Fourteenth Amendment.

Am. Compl. [ECF No. 20] at ¶ 21. Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 22] on January 19, 2011 with respect to the First Amendment and Equal Protection claims and alternatively argued that the claims should be dismissed against Defendant Commissioners on the basis of qualified immunity. Mot. to Dismiss [ECF No. 22] ¶¶ 6-7. United States Magistrate Judge Cathy Bissoon entered a Report and Recommendation [ECF No. 27] finding that Plaintiff alleged a violation of a federal right as applied to her First Amendment retaliation claim, her speech was protected by the First

Amendment, and she had sufficiently alleged facts demonstrating a cause of action.[6] Rep. and Rec. of 4/11/2011 [ECF No. 27] at 3, 7. Additionally, the Court found that Plaintiff had sufficiently stated an Equal Protection claim by identifying similarly situated individuals and occasions of differential treatment. *Id*. at 13-14. The Court found that the Defendant Commissioners were not entitled to qualified immunity on the First Amendment claims. *Id*. at 9-13.

Defendants filed a Motion for Summary Judgment [ECF No. 56] on June 29, 2012. As to the First Amendment claims, Defendants specifically argue that (1) Plaintiff failed to adduce evidence to establish that she was retaliated against based on her political views or any other speech within the meaning of the First Amendment; and (2) Defendants are entitled to qualified immunity under the First Amendment claims. Defs.' Br. [ECF 57] at 2, 8, 13, 16. Defendants' second argument has already been determined adversely to Defendants and is the law of the case. *Pub. Interest Research Grp. Of New Jersey, Inc. v. Magnesium Elektron, Inc*., 123 F.3d 111, 116-17 (3d Cir. 1997) (circumstances warranting a court's reconsideration of an issue decided earlier in the case include introduction of new evidence, supervening new law, or the earlier decision was clearly erroneous and would create manifest injustice). Accordingly, Defendants are not entitled to qualified immunity on the First Amendment claims. As to the equal protection claim, Defendants argue that: (1) the evidence of record is insufficient to establish that the Defendants violated Plaintiff's Equal Protection rights; and (2) the Equal Protection claim is duplicative of the First Amendment claim. *Id*. at 20. Defendants do not advance a qualified immunity defense as to the equal protection claim or a legislative immunity defense; therefore

---

[6] The Report and Recommendation was subsequently adopted by the District Court. Order of 5/18/2011 [ECF No. 30]. The District Court augmented the Report and Recommendation as to the Equal Protection claim and found "whether the only conduct plaintiff can prove in support of her Equal Protection claim is duplicative of the activity receiving First Amendment protection is not an appropriate inquiry at this juncture." *Id*. at 1-2.

such arguments will not be considered or discussed. Defendant Fayette County argues that because the claims for First Amendment retaliation and equal protection fail, the section 1983 action against it should be dismissed because Plaintiff has failed to adduce evidence from which a reasonable fact finder could conclude that any individual County official has violated her constitutional rights. *Id*. at 24.

### III. JURISDICTION

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as Plaintiff asserts claims under the First and Fourteenth Amendments and under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil cases arising under the Constitution, laws, or treaties of the United States"). All parties have consented to jurisdiction to proceed before a United States Magistrate Judge.[7] Accordingly, this Court has the authority to decide dispositive motions and to enter final judgment.

### IV. FEDERAL RULE OF CIVIL PROCEDURE 56 STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may prevail by demonstrating that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party may not rely on "bare assertions or conclusory allegations,

---

[7] Under the Federal Magistrate Judges Act ["Act"], a Magistrate Judge's jurisdiction may arise through the consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Such a referral gives the magistrate judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007). "[S]o long as consent [to Magistrate Judge jurisdiction] is clear and unambiguous, it is effective." *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d at 535; *Roell*, 538 U.S. at 591 (consent may be inferred from parties' actions). The instant matter was reassigned to Magistrate Judge Cynthia Reed Eddy on October 27, 2011. Subsequently, all parties consented to Magistrate Judge jurisdiction. *See* Def.'s Consent to U.S. Magistrate Jurisdiction [ECF No. 49]; Pl.'s Consent to U.S. Magistrate Jurisdiction [ECF No. 51].

but must adduce evidence establishing that there is a genuine factual dispute for trial." *Hogan v. Twp. of Haddon*, 278 Fed.App'x. 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)).

"A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)) ("there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find [for Plaintiff] by clear and convincing evidence"). "While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must 'set forth specific facts showing that there is a genuine issue for trial.'" *Various Plaintiffs v. Various Defendants*, 856 F.Supp.2d 703, 707 (E.D.Pa. 2012) (quoting *Anderson*, 477 U.S. at 250).

## V. DISCUSSION

Plaintiff has failed to adduce a material issue of fact necessary to set forth a claim of First Amendment retaliation or a violation of the Equal Protection Clause of the Fourteenth Amendment, and Defendant Commissioners are entitled to summary judgment on those claims. Likewise, Fayette County is entitled to summary judgment on the section 1983 claim because Plaintiff has failed to adduce evidence illustrating how the County violated her constitutional rights.

### a. First Amendment Retaliation Claim

Generally, the First Amendment protects a citizen's speech by prohibiting "government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v.*

*Moore*, 547 U.S. 250, 256 (2006). "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Hogan v. Twp. of Haddon*, 278 Fed. App'x. 98, 102-03 (3d Cir. 2008) (quoting *McKee v. Hart*, 436 F.3d 165, 169-70 (3d Cir. 2006)). For Plaintiff to state a First Amendment retaliation claim, she must allege facts sufficient to plausibly show: (1) she engaged in "constitutionally protected conduct"; (2) the County "engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights"; and (3) there is a "causal link between the constitutionally protected conduct and the retaliatory action." *Kriss v. Fayette Cnty.*, 2012 WL 5816867, *3 (3d Cir. Nov. 16, 2012) (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)).

Although Plaintiff engaged in protected activity by engaging in political speech, there is not sufficient evidence to show that the retaliation Plaintiff suffered was sufficient to deter a person of ordinary firmness from speaking. Importantly, a First Amendment retaliation claim exists only if the alleged retaliatory conduct is sufficient "to deter a person of ordinary firmness from exercising her First Amendment rights." *McKee*, 436 F.3d at 170 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)). *See Camacho v. Brandon*, 317 F.3d 153, 166 (2d Cir. 2003) ("not every retaliation gives rise to a claim"; "courts should be reluctant to interfere with intra-legislative conduct that falls short of depriving the electorate of representation in the legislature"; and "courts should intervene in only the most severe cases of legislative retaliation for the exercise of First Amendment rights, thereby allowing ample room for the hurly burly of legislative decision[]making") (Walker, J., concurring). The chilling effect of the retaliatory conduct "need not be great in order to be actionable" but it "must be more than de minimis." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). "[I]t would trivialize the First Amendment to hold that harassment from exercising the right of free speech is

11

always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise[.] . . ." *Suppan*, 203 F.3d at 235 (critical statements of an employee's job performance, reprimands and the employee's removal from leadership positions were de minimis). *See also Revell v. City of Jersey City*, 394 Fed.App'x. 903, 906 (3d Cir. 2010) (criticisms, false accusations, admonishments, verbal reprimands were de minimis); *but see Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (refusal to hire, promote, transfer or recall were not de minimis).

In *Hogan*, a township commissioner brought a First Amendment retaliation claim against the township and its mayor. *Hogan*, 278 Fed.App'x. at 100. Among her claims, the commissioner alleged that the mayor "elbowed her after she criticized the manner in which he spoke to a Township private citizen[,]" and encouraged township employees to file lawsuits against Hogan for her criticism of Township employees. *Id*. at 103. In determining whether this conduct would be sufficient to deter a person of ordinary firmness of exercising her First Amendment rights, the district court stated: "[s]uch a minor disturbance or annoyance, however boorish or uncouth, does not rise to the level of a constitutional deprivation. **The Constitution protects rights and freedoms, but it does not enshrine a code of personal civility**." *Hogan v. Twp. of Haddon*, 2006 WL 3490353, *10 (D.N.J. 2006) ("*Hogan I*") (emphasis added) *aff'd* Fed. App'x. 98, 103 (3d Cir. 2008) ("*Hogan II*") ("While [mayor's] actions may have been untoward it was not sufficient to deter a person of ordinary firmness from exercising her First Amendment rights"). Because Hogan was "never physically restrained or prevented from attending or voicing her views at a public meeting[,] . . . [had] never been prevented by [the mayor] or any Township official from speaking with the press or anyone outside of Commissioner's meetings[,]" the elbowing incident was a de minimis act. *Hogan I*, 2006 WL

3490353 at *10. Further, because Hogan presented no evidence to show that the mayor had any involvement in the lawsuits filed against her by township employees or that he even had control over which employees would file suit, the claim failed for a lack of evidence for which a reasonable jury could find in her favor. *Id*.

Plaintiff alleges that Defendant Commissioners failed to include her on preliminary negotiations with County contractors, the County budget meetings, and the hiring of one County employee, forced her to obtain her own legal representation when the County's interest was aligned with her own in the Cellulare lawsuit, and manipulated Board meeting minutes to vilify her. Defendant Commissioners' conduct of slighting Plaintiff from being copied on emails, ostracizing her from budget meetings and ignoring, excluding and/or lying to Plaintiff would not chill the speech of a person of ordinary firmness. Even viewing Defendant Commissioners' conduct collectively, it would not keep a person of ordinary firmness from speaking.

With regard to the Cellulare lawsuit, there is no evidence of record to establish that any Defendants were inextricably linked to the lawsuit or controlled whether the Cellulares would bring suit and against whom they would bring it. That Commissioner Zapotosky is acquaintances with a non-party family member of the Cellulares and exchanged emails regarding an editorial written by him about the lawsuit is not a material fact that a reasonable fact finder could find supports a claim for retaliation. The assertion that the Defendant Commissioners made statements to the press about the lawsuit contrary to counsel's advice on no account renders such statements retaliation under the First Amendment. Likewise, there is no evidence of record that Defendant Commissioners directed others to manipulate the Board minutes in order to vilify Plaintiff as pled in the Amended Complaint. Plaintiff's only evidence supporting this fact is that Plaintiff alleges Defendants directed that the minutes exclude positive comments

13

made by a citizen about Plaintiff at the Board meeting, while including positive comments made about Commissioner Zapotosky. The fact that positive comments about Plaintiff were omitted from Board minutes would not chill the speech of a person of ordinary firmness. That Defendant Commissioners may have acted out of general animosity towards Plaintiff and may have been arrogant and antagonistic to her does not support a First Amendment retaliation claim. Because the conduct by Defendant Commissioners is insufficient to deter Plaintiff from exercising her First Amendment rights, her retaliation claim fails and the Court need not discuss whether there was a causal link between Plaintiff's political speech and Defendant Commissioners' conduct.

### b. *Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1. Its purpose "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441, 445 (1923); *Sunday Lake Iron Co. v. Twp. of Wakefield*, 247 U.S. 350, 352 (1918)).

Our Supreme Court has recognized that an individual may successfully bring an equal protection claim under a "class of one" theory "where the plaintiff alleged that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. Although the "class of one theory" is a new jurisprudential concept, the Court of Appeals for the Third Circuit developed the holding in *Olech* by finding that in order to recover under a class of one theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so

intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (dismissing equal protection claim because plaintiff Borough manager did not allege the existence of similarly situated individuals). *See also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

A "class of one" equal protection claim is not cognizable in the public employment context. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008). In *Engquist*, the Supreme Court stated:

> Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.

*Engquist*, 553 U.S. at 598.[8] Plaintiff specifically alleges she is seeking recovery under a class of one theory, but cites to no authority to override the Supreme Court's holding in *Engquist*. As an employee of Fayette County, a public entity, Plaintiff cannot allege a class of one Equal Protection claim. Even if Plaintiff's equal protection claim was deemed cognizable, Plaintiff has failed to adduce evidence that Defendants had no rational basis for treating her differently. To the contrary, it is axiomatic and expected in the political arena that elected officials treat political allies differently than political foes.[9]

---

[8] In their briefs, both parties have consistently applied standards interpreting public employees' constitutional rights. Although there is no precedent in this Circuit specifically applying *Engquist* to an elected official, at least one court has applied *Engquist* in this context. *Blank v. Benzie Cnty. Bd. of Com'rs*, 2012 WL 1085471, *5-*6 (W.D.Mich. March 30, 2012) (applying *Engquist* holding and rationale to elected official). In an analogous vein, the definition of "employee" under Title VII and ADEA specifically excludes persons who are elected to public office, thereby disallowing elected officials to bring a discrimination claim. *See* 42 U.S.C. § 2000(e)(f) (Title VII); 29 U.S.C. § 630(f) (ADEA). In any event, for the purposes of this motion, the public employee standard for an equal protection claim under a class of one theory will be applied to this case, as we would reach the same result whether that standard is applied or not.

[9] Several cases are instructive on this point. *See Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998) ("the ultimate check on legislative abuse – the electoral process – applies with equal force at the local level, where legislators are often more closely responsible to the electorate"); *Tenney v. Bradhove*, 341 U.S. 367, 378 (1951) ("In times of

### c. *Municipal Liability*

Under 42 U.S.C. § 1983, local governing bodies may be sued directly for "monetary, declaratory, or injunctive relief where … the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). Liability attaches to a municipal body only where the action may fairly be said to represent official policy and it inflicts the injury sustained. *Id*. at 694. "There cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact … the officer inflicted no constitutional harm." *Hill*, 455 F.3d at 245 (internal citations and quotations omitted). Because the claims alleging that Defendant Commissioners violated Plaintiff's First and Fourteenth Amendment rights fail, Plaintiff cannot maintain a section 1983 action against Fayette County. Assuming *arguendo* that Plaintiff had alleged a constitutional violation, Fayette County would not be responsible because Plaintiff failed to illustrate in the record how any municipal law, policy, custom, rule or regulation contributed to the violation of her First or Fourteenth Amendment rights under the *Monell* standard. Accordingly, Fayette County is entitled to summary judgment.

### VI. CONCLUSION

---

political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies. . . . The First Amendment provides the private citizen with an important bulwark against government power, but it does not immunize an elected official from the ire of his adversaries"); *Sheilds v. Twp of Comstock*, 617 F.Supp.2d 606, 614-15 (Elected representatives are "expected to speak out on issues important to [their] constituents. In the course of discharging this duty, political opposition inevitably will arise. Opposition may form based in whole or in part on the content of [the elected official's] statements. That is the very essence of politics. [An elected official] has no more of a First Amendment claim than does a United States Senator whose political opposition triggers a filibuster to prevent or delay him from speaking on the Senate floor. Politics can be a frustrating and humbling experience, but '[t]he First Amendment is not an instrument designed to outlaw partisan voting or petty political bickering.' [*Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994)]. [An elected official] cannot use the federal courts to prevent his political opponents from targeting him because of public statements he made in his capacity as an elected official").

Defendants' Motion for Summary Judgment [ECF No. 56] is granted.  Plaintiff has not alleged sufficient evidence adducing a First Amendment retaliation claim.  Further, Plaintiff has failed to show that she is entitled to protection under the Fourteenth Amendment Equal Protection clause, or that Defendants had no rational basis for treating her differently.  As a consequence, the 42 U.S.C. § 1983 claims against Defendant Fayette County are also entitled to summary judgment.  It follows that Defendant's Motion to Strike [ECF No. 66] will be denied as moot.  An appropriate Order will be entered separately.

Dated:  November 29, 2012

By the Court,

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     All attorneys of record via CM-ECF